WILLIAMS CUKER BEREZOFSKY
Joseph Alan Venti, Esquire (NJ Bar ID. No. 031742008)
joeventi@wcblegal.com
Woodland Falls Corporate Park
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
856-667-0500 (Fax: 856-667-5133)

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

———————————————— x

| | |
|---|---|
| MELISSA SPOSITI and MICHAEL SPOSITI, | : |
| | : |
| | : Civil Action No. 13-3555 (RMB) (JS) |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : **Motion Date:  November 4, 2013** |
| BANK OF AMERICA HOME LOANS; | : |
| BANK OF AMERICA, N.A.; EXPERIAN | : |
| INFORMATION SOLUTIONS, INC.; | : |
| EQUIFAX INFORMATION SERVICES, | : |
| INC.; and TRANS UNION LLC, | : |
| | : |
| Defendants. | : |

———————————————— x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO BANA'S MOTION TO PARTIALLY DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT [ECF #45]**

# <u>TABLE OF CONTENTS</u>

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    FCRA does not preempt any of Plaintiffs' State law claims . . . . . . . .5

            1.    Claims based on the lawfulness of representations made
                  in TPP agreements do not implicate a FCRA furnisher's
                  responsibilities under 15 U.S.C. § 1681s-2 . . . . . . . . . . . . . . .5

            2.    There is absolutely no need for the Court to consider
                  whether to apply the "total preemption" approach to
                  FCRA preemption, but that approach is wrong in any event . . 8

      B.    The New Jersey Consumer Fraud Act provides a remedy for
            deceptive representations in TPP agreements . . . . . . . . . . . . . . . . . 12

      C.    Plaintiffs' TPP agreement contains enforceable promises, the
            detrimental reliance upon which sustains a cause of action for
            promissory estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

      D.    Michael Spositi adequately pleaded his claim for negligent
            infliction of emotional distress under New Jersey law . . . . . . . . . . 18

V.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abeer Tutanji v. Bank of Am.*, Civ. Case No. 12-887,
    2012 U.S. Dist. LEXIS 75271 (D.N.J. May 31, 2012) . . . . . . . . . . . . . .10-11

*Albrecht v. Williams*, Civ. Case No. 04-1895,
    2009 U.S. Dist. LEXIS 95070 (D.N.J. Oct. 13, 2009) . . . . . . . . . . . . . . . .19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 19

*Assocs. Home Equity Servs., Inc. v. Troup,*
    343 N.J. Super. 254, 778 A.2d 529 (App. Div. 2001) . . . . . . . . . . . . . . . . 14

*Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470 (3d Cir. 2012) . . . . . . . . . . . . . .5

*Bijeau-Seitz v. Atl. Coast Mortg. Servs.*, Civ. Case No. 12-6372,
    2013 U.S. Dist. LEXIS 90877 (D.N.J. June 27, 2013) . . . . . . . . . . . . . . . 17

*Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438 (D.N.J. 2010) . . . . . . . . . . . . . .6

*Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 647 A.2d 454 (1994) . . . . . . . . . . . . . .16

*D'Agostino v. Maldonado*, A-82/83 September Term 2011, 068940,
    2013 N.J. LEXIS 953 (N.J. Oct. 3, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Davis v. Wells Fargo Bank, N.A.*, Civ. Case No. 10-47,
    2013 U.S. Dist. LEXIS 140961 (S.D. Tex. Sept. 30, 2013) . . . . . . . . . . .7-8

*Falzone v. Busch*, 45 N.J. 559, 214 A.2d 12 (1965) . . . . . . . . . . . . . . . . . . . . . . .20

*Forbes v. Wells Fargo Home Mortg.*, Civ. Case No. 10-160,
    2011 U.S. Dist. LEXIS 85682 (E.D. Va. Mar. 18, 2011) . . . . . . . . . . . . . 7

*Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 691 A.2d 350 (1997) . . . . . . . . 14

*Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 25 A.3d 1103 (2011). . . . . .14-16

*Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147 (9th Cir. 2009) . . . . . . . . . .8

*Houbigant, Inc. v. Federal Ins. Co.*, 374 F.3d 192 (3d Cir. 2004) . . . . . . . . . . . . .14

*Howard v. Mun. Credit Union*, Civ. Case No. 05-7488,
        2008 U.S. Dist. LEXIS 124085 (S.D.N.Y. Jan. 24, 2008) . . . . . . . . . . . . .11

*In re Bank of America Home Affordable Modification Program
        (HAMP) Contract Litig.*, M.D.L. No. 10-2193,
        2013 U.S. Dist. LEXIS 126028 (D. Mass. Sept. 4, 2013) . . . . . . . . . . . . . 17

*Jaramillo v. Experian Info. Solutions, Inc.*,
        155 F. Supp. 2d 356 (E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Lawson v. Nugent*, 702 F. Supp. 91 (D.N.J. 1988) . . . . . . . . . . . . . . . . . . . . . . . .20

*Lemaldi v. De Tomaso of Am., Inc.*,
        156 N.J. Super. 441, 383 A.2d 1220 (Law Div. 1978) . . . . . . . . . . . . . . . . 21

*Lemelledo v. Beneficial Management Corp.*,
        150 N.J. 255, 696 A.2d 546 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Manno v. Am. Gen. Fin. Co.*, 439 F. Supp. 2d 418 (E.D. Pa. 2006) . . . . . . . . . . 10

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) . . . . . . . . . . . . . . 12

*Muniz v. United Hosps. Med. Ctr. Presbyterian Hosp.*,
        153 N.J. Super. 79, 379 A.2d 57, 58 (App. Div. 1977) . . . . . . . . . . . . . . . . 21

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) . . . . . . . . . . . . . . . .4-5

*Portee v. Jaffee*, 84 N.J. 88, 417 A.2d 521 (1980) . . . . . . . . . . . . . . . . . . . 18-19, 21

*Sites v. Nationstar Mortg. LLC*, 646 F. Supp. 2d 699 (M.D. Pa. 2009) . . . . . . . . .9

*Slimm v. Bank of America Corp.*, Civ. Case No. 12-5846,
        2013 U.S. Dist. LEXIS 62849 (D.N.J. May 2, 2013) . . . . . . . . . . . . . . . . . 17

iii

*Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776 (W.D. Ky. 2003) . . . . . . . .11

*Toll Bros., Inc. v. Board of Chosen Freeholders of Burlington*,
    194 N.J. 223, 944 A.2d 1 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Statutes and Rules of Procedure**

N.J. Stat. Ann. § 56:8-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12-13

N.J. Stat. Ann. § 56:8-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

15 U.S.C. § 1681h(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15 U.S.C. § 1681s-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

15 U.S.C. § 1681t(b)(1)(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

28 U.S.C. § 1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Miscellaneous**

A. Scalia and B. Garner,
    *Reading Law: The Interpretation of Legal Texts* (2012) . . . . . . . . . . . . . . . 6

# I.   <u>INTRODUCTION</u>

Defendants Bank of America, N.A. and Bank of America Home Loans (collectively, "BANA") move to dismiss the four State law claims in Plaintiffs' First Amended Complaint ("Complaint" or "Compl.") using an imaginative and over-expansive interpretation of the Fair Credit Reporting Act's ("FCRA") express preemption provision:  15 U.S.C. § 1681t(b)(1)(F).  However, that provision can never apply in a case like this case, where Plaintiffs' State law claims are based on non-credit-reporting conduct by their mortgagee and loan servicer that occurred well in advance of anything that would trigger BANA's furnisher obligations under FCRA.  BANA's preemption argument must fail.

BANA alternatively moves to dismiss three of Plaintiffs' four State law claims based on alleged pleading deficiencies.  Yet such deficiencies only exist if decisions from the New Jersey courts are completely ignored, and the Court should not accept BANA's invitation to do just that.  Plaintiffs have sufficiently pleaded their State law claims, and the Court should deny BANA's motion for partial dismissal forthwith.

# II.   <u>BACKGROUND</u>

In October 2011, Plaintiffs Melissa and Michael Spositi sought a loan modification from their mortgage company, BANA, in order to make their monthly

payments more affordable.  *See* Compl. at ¶¶ 12, 18.  Months went by until, on

March 20, 2012, BANA finally contacted Plaintiffs to tell them they were

conditionally approved for a modification.  *See* Compl. at ¶ 19.  According to the

March 20, 2012 written communication from BANA (the "TPP"), to obtain a

permanent modification Plaintiffs were required to first complete a trial period of

payments.  *See* Compl. at ¶ 19, 21.  The TPP consisted of three consecutive

monthly payments of marginally lower amounts than Plaintiffs' regular mortgage

payments.  *See* Compl. at ¶¶ 14, 19.

Between July and September 2012, Plaintiffs made TPP payments in the

amount and manner required by BANA.  *See* Compl. at ¶¶ 28-29.  As a result,

Plaintiffs in October 2012 were notified by BANA that they had been approved for

a permanent loan modification.  *See* Compl. at ¶¶ 32-33.  They rejected it.  *See*

Compl. at ¶ 37.

Why?  Because Plaintiffs had come to realize that, on many levels, they had

been deceived by BANA.  More specifically:

* The TPP stated that Plaintiffs' "loan will be reported as 'paying under
  a partial payment plan' during the trial period"; it was not reported as
  such.  *See* Compl. at ¶¶ 82-84.

* The TPP stated that Plaintiffs' mortgage would only be reported as
  being in "delinquent" status if Plaintiffs were behind on their
  payments when they started the TPP, yet Plaintiffs never missed a
  payment and were still reported delinquent from July though

2

September 2012.  *See* Compl. at ¶¶ 82-83.

* The TPP stated that Plaintiffs' participation in a loan modification program "may" negatively affect their credit when in fact, and unbeknownst to Plaintiffs, BANA's policy was to damage the credit of *every* loan modification participant.  *See* Compl. at ¶¶ 82-84.

* Modification automatically terminated Plaintiffs' participation in BANA's borrower protection plan ("BPP"), a fact BANA did not disclose to Plaintiffs until October 1, 2012, after they had completed the TPP.  *See* Compl. at ¶¶ 31-32.

* Discounting the $95-per-month payments for the BPP, which Plaintiffs would no longer be eligible for, BANA's loan modification offer reduced Plaintiffs' monthly mortgage payments by less than $150—an amount that, to Plaintiffs, was surprisingly low.  *See* Compl. at ¶¶ 14, 17, 35.

* BANA had communicated to the Federal Housing Administration ("FHA"), falsely, that Plaintiffs had defaulted on their mortgage in the amount of $5,838.92, which was to result in the FHA placing a lien on Plaintiffs' home.  *See* Compl. at ¶ 35.

On October 10, 2013, when Plaintiffs received the permanent modification paperwork in the mail, the various lies and deceptive acts by BANA all coalesced for the first time and hit Plaintiff Michael Spositi like a ton of bricks.  *See* Compl. at ¶¶ 98, 100.  Michael was hospitalized that day, and again three days later.  *See* Compl. at ¶¶ 98-99.  BANA's conduct had caused Michael to suffer severe chest and abdominal pain, elevated blood pressure, and emotional distress.  *See* Compl. at ¶¶ 98-99, 102-103.  But the ordeal was far from over.

For several months Plaintiffs contacted BANA, as well as Defendants

3

Experian Information Solutions, Inc., Equifax Information Services, Inc. and Trans Union LLC, in what proved to be futile attempts to correct the inaccurate reporting of Plaintiffs' TPP payments.  *See* Compl. at ¶¶ 37-39, 41, 44-46, 49-51.  To this very day BANA has failed to correct the inaccurate information on Plaintiffs' credit reports.

On May 7, 2013, Plaintiffs resolved to file this suit in the Superior Court of New Jersey, Gloucester County.  *See* ECF No. 1-2.  On June 6, 2013, Trans Union LLC removed this case to federal court, relying on 28 U.S.C. §§ 1331 and 1441. *See* ECF No. 1.[1]  Plaintiffs filed the operative Complaint on August 8, 2013, *see* ECF No. 33, and in response BANA filed its motion to partially dismiss Plaintiffs' Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* ECF No. 45. BANA seeks only to dismiss Plaintiffs's State law claims (Counts III-VI), not Plaintiffs' claim against BANA for negligent and/or willful violations of FCRA (Count I).

### III.   <u>LEGAL STANDARD</u>

In deciding a Rule 12(b)(6) motion, the Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cnty. of Allegheny*, 515

---

[1] Trans Union LLC and Plaintiffs reached a settlement thereafter.  *See* ECF No. 28.

4

F.3d 224, 228 (3d Cir. 2008).  A complaint survives dismissal if it contains

"sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

omitted).  Moreover, "[a] claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*,

708 F.3d 470, 483 n.17 (3d Cir. 2012) (citation omitted).

## IV.   <u>ARGUMENT</u>

### A.   **FCRA does not preempt any of Plaintiffs' State law claims.**

1.   Claims based on the lawfulness of representations made in TPP
agreements do not implicate a FCRA furnisher's
responsibilities under 15 U.S.C. § 1681s-2.

BANA claims that FCRA expressly preempts state laws that require or

proscribe conduct regulated by 15 U.S.C. § 1681s-2 (titled "Responsibilities of

furnishers of information to consumer reporting agencies"), and that claim is true

as far as it goes.  It stops well short of this case, though, because BANA fails to

cite a single furnisher responsibility under § 1681s-2 that would be *de facto*

regulated in the event Plaintiffs were successful with any of their state law claims.

*Cf.* 15 U.S.C. § 1681t(b)(1)(F) ("No requirement or prohibition may be imposed

under the  laws of any State . . . *with respect to any subject matter regulated under.*

. . *[15 U.S.C. § 1681s-2]*, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .") (emphasis added).[2]  And, to be sure, there is nothing in § 1681s-2 that regulates the veracity of representations—even representations that concern credit reporting—in TPPs or any other sort of agreement.  Section 1681t(b)(1)(F) is, therefore, plainly inapplicable.

BANA's reliance on *Burrell v. DFS Servs.*, 753 F. Supp. 2d 438 (D.N.J. 2010), exemplifies the problematic nature of its expansive preemption argument. In *Burrell*, the consumer's state law claims for emotional distress, defamation, and negligence were preempted because they directly challenged the defendants' failures to correct fraudulent charges on a stolen credit card.  *Id.* at 439-40, 449-51. The result in *Burrell* makes perfect sense:  furnishers are supposed to correct inaccuracies on credit reports pursuant to FCRA, and State law cannot supplant that obligation.  This case, by contrast, is nothing like *Burrell* because Plaintiffs' State law claims do not challenge *any* aspect of BANA's FCRA responsibilities.

---

[2] BANA advances its own, self-serving standard for when FCRA preemption applies:  if State law claims are "inextricably linked" to credit reporting.  ECF No. 45-1 at p. 4.  The quoted phrase of course does not appear in § 1681t(b)(1)(F).  *Cf.* A. Scalia and B. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012) ("When deciding an issue governed by the text of a legal instrument, the careful lawyer or judge trusts neither memory nor paraphrase but examines the very words of the instrument.") (footnote omitted).  The Court should reject BANA's rewrite of the statutory text.

BANA's response to this stark reality is wholly unpersuasive.  Its contention that "[e]ven a cursory reading of the [Complaint] reveals that all of Plaintiffs' claims are dependent on the allegation that BANA reported inaccurate information to the CRAs," ECF No. 45-1 at p. 5, itself reveals that BANA conducted no more than a cursory review of Plaintiffs' Complaint.  Theoretically, BANA could have complied with every single FCRA responsibility under the sun, and it would still be liable to Plaintiffs for violations of New Jersey law if, as alleged, it lured Plaintiffs into TPP participation with lies and half-truths and Plaintiffs were injured as a consequence.[3]  FCRA preemption is not a shield to what is in effect predatory lending; BANA cannot hide behind § 1681t(b)(1)(F).

---

[3] Though it is also the case that BANA did not comply with FCRA, liability for conduct related to *actual credit reporting* is the subject of Count I of the Complaint, not Counts III through VI; it is of no preemption consequence that "certain" of the damages outlined in Counts III through V, *see, e.g.,* Compl. at ¶ 88, *might* overlap with the damages outlined in Count I.  *See Forbes v. Wells Fargo Home Mortg.*, Civ. Case No. 10-160, 2011 U.S. Dist. LEXIS 85682, at *11 (E.D. Va. Mar. 18, 2011) ("Plaintiffs allege breach of contract, negligence, unjust enrichment and constructive fraud against Defendants.  While the facts underlying these claims pertain to Plaintiffs attempt to qualify for loan modification and . . . while Plaintiffs have alleged harm to their credit score, they have not made any allegations relating to the actual credit reporting (e.g, negative credit reporting) or the responsibilities of those who report credit information. Therefore, this Court finds that Plaintiffs' request for damages to their credit score does not implicate FCRA.") (internal citations omitted); *cf. Davis v. Wells Fargo Bank, N.A.*, Civ. Case No. 10-47, 2013 U.S. Dist. LEXIS 140961, at *28 (S.D. Tex. Sept. 30, 2013) ("Policing the line between 'loss of credit' damages arising from fraudulent conduct and preempted damages relating to credit agency reporting is difficult at

2. There is absolutely no need for the Court to consider whether to apply the "total preemption" approach to FCRA preemption, but that approach is wrong in any event.

By invoking the specter of "total preemption," BANA attempts to draw the Court into deciding a complicated *but ultimately irrelevant* issue that has divided district courts across the country. *See Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1166 (9th Cir. 2009) ("Attempting to reconcile [FCRA's preemption provision with its qualified immunity provision] has left district courts in disarray."). For the reasons already given, the Court need not and should not address the scope of FCRA preemption in situations where state law claims challenge conduct regulated by FCRA because this is not such a situation; the conduct at issue in Counts III through VI is *not* "subject matter regulated under" 15 U.S.C. § 1681s-2.

Nevertheless, and insofar as the Court is inclined to enter the fray, it should reject BANA's reliance on the so-called "total preemption" approach. That approach is rooted in a decision that was promptly vacated on reconsideration. *See Jaramillo v. Experian Info. Solutions, Inc.*, 155 F. Supp. 2d 356, 362 (E.D. Pa. 2001) ("[S]ection 1681t(b)(1)(F) clearly eliminated all state causes of action

_____

the pleading stage, and may be an unnecessary task if plaintiffs are unable to prove liability. The Court therefore rejects this preemption defense as a ground for Rule 12 dismissal because—even if successful—it would not warrant dismissal of the claim but only limit damages.").

against furnishers of information, not just ones that stem from statutes that relate

specifically to credit reporting."), *vacated in relevant part*, 2001 U.S. Dist. LEXIS

10221 (E.D. Pa. June 20, 2001).[4]

Total preemption is but one of the multiple different approaches that courts

have used to interpret and reconcile § 1681t(b)(1)(F) and FCRA's qualified

immunity provision, 15 U.S.C. § 1681h(e).[5]  Others are the so-called "temporal"

and "statutory" approaches.  The Eastern District of Pennsylvania has explained

---

[4] Conducting a thorough examination of *Jaramillo* and FCRA preemption, Chief Judge Kane of Pennsylvania's Middle District has written that "[w]ith only a few exceptions, what district courts have understandably concluded is that the 'total preemption approach *cannot be correct*.'"  *Sites v. Nationstar Mortg. LLC*, 646 F. Supp. 2d 699, 707 (M.D. Pa. 2009) (collecting cases) (emphasis added).

[5] 15 U.S.C. § 1681h(e) reads in full as follows:

> Limitation of liability. Except as provided in sections 616 and 617 [15 USCS §§ 1681n and 1681o], no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 609, 610, or 615 [15 USCS § 1681g, 1681h, or 1681m], or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report[,] except as to false information furnished with malice or willful intent to injure such consumer.

the three aforementioned approaches as follows:

> Under the 'total preemption' approach, t(b)(1)(F) does
> indeed preempt all state law claims against furnishers of
> credit information arising from conduct regulated by
> 1681s-2, thus effectively repealing the earlier preemption
> provision, 1681h(e).   Under the 'temporal' approach,
> preemption depends on whether the cause of action arises
> before or after a credit information furnisher has notice of
> a consumer dispute.   Finally, under the 'statutory'
> approach, t(b)(1)(F) preempts only state law claims
> against credit information furnishers brought under state
> statutes, just as 1681h(e) preempts only state tort claims.

*Manno v. Am. Gen. Fin. Co.*, 439 F. Supp. 2d 418, 424-25 (E.D. Pa. 2006).

The more reasoned approach, however, is one that looks at the role of the

defendant in the context of a specific claim.   An entity like BANA, who can wear

so many hats—mortgagee, loan servicer, credit-information furnisher, debt-

collector, etc.—presents the prime reason for adopting what Plaintiffs will call the

"functional" approach.

Under the "functional" approach, a consumer's State UDAP claim

predicated on, say, predatory lending or debt collection practices would not be

preempted by § 1681t(b)(1)(F), *even if* the complaint separately asserted a claim

under FCRA, if the allegedly unlawful conduct occurred while the defendant was

operating as something other than a credit-information furnisher.   *Cf. Abeer Tutanji*

*v. Bank of Am.*, Civ. Case No. 12-887, 2012 U.S. Dist. LEXIS 75271, at *21

10

(D.N.J. May 31, 2012) ("Plaintiff's common law claims pertaining to Defendant's credit reporting are preempted pursuant to 15 U.S.C. § 1681t(b)(1)(F). Accordingly, the Court will only consider Plaintiff's claims regarding Defendant's purported unlawful imposition of additional terms to the terms of Plaintiff's loan."); *Howard v. Mun. Credit Union*, Civ. Case No. 05-7488, 2008 U.S. Dist. LEXIS 124085, at *28 (S.D.N.Y. Jan. 24, 2008) (no FCRA preemption of state law claims that were predicated on plaintiff's allegations that "MCU billed him for an auto insurance policy that he did not accept and a life insurance policy that he cancelled, and that the MCU overcharged him for his auto loan."), *report and recommendation adopted in relevant part*, 2008 U.S. Dist. LEXIS 23448 (S.D.N.Y. Mar. 25, 2008); *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 787 (W.D. Ky. 2003) (Section 1681s-2 "only regulates conduct involved in the reporting of credit information. The § 1681t(b)(1)(F) preemption provision, then, clearly does not apply to those tort claims that only involve the Bank's actions independent of its function as a furnisher of credit information. The Stafford's harassment claim appears to fall outside § 1681s-2's reach, as do aspects of the invasion of privacy claim.").

   In Plaintiffs' case, the critical distinction between BANA's roles as mortgagee/loan-servicer and credit-information furnisher is evident from the

Complaint, which explicitly ties the four State law claims (Counts III-VI) to unlawful representations in the TPP, not failings with respect to the investigation or reporting of Plaintiffs' credit information. Indeed, BANA made the representations in the TPP that are at issue here months prior to any TPP payments and, as a result, months before BANA caused inaccuracies to appear on Plaintiffs' credit reports. And, most importantly, the representations were not made by BANA while it was wearing its furnisher hat. BANA's resort to a "total preemption" argument is therefore unavailing.

BANA's alternative arguments for dismissal, addressed *infra*, should fare no better.

### B.    The New Jersey Consumer Fraud Act provides a remedy for deceptive representations in TPP agreements.

Count IV of Plaintiffs' Complaint asserts against BANA a claim under New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq*. ("NJCFA"). *See* Compl. at ¶¶ 78-90. "The NJCFA prohibits certain deceptive commercial behavior that it calls 'unlawful practice[s].'" *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 605 (3d Cir. 2012).[6] As outlined in the Complaint, the deceptive commercial

---

[6] Specifically, the NJCFA proscribes:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false

12

behavior at issue here consists of BANA lacing a TPP agreement with false and/or misleading statements about what would happen during the loan-modification evaluation process.  The NJCFA unquestionably provides a remedy for this sort of consumer fraud.

However, in its motion BANA argues that the pleading of Count IV is deficient because its supporting allegations "are not premised upon the sale or advertisement of their property."  ECF No. 45-1 at p. 6.  This argument reflects a profoundly myopic view of both the allegations in the Complaint and the relevant decisional law in New Jersey.  It also ignores the NJCFA's definition of "advertisement," which covers "the attempt . . . to induce . . . any person . . . to make any loan" regarding merchandise or real estate.  N.J. Stat. Ann. § 56:8-1(a).  Furthermore, if BANA's argument were to prevail it would result in the twisted irony of NJCFA coverage for deceptive statements in a loan agreement, *see Assocs. Home Equity Servs., Inc. v. Troup*, 343 N.J. Super. 254, 778 A.2d 529,

---

pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . .

N.J. Stat. Ann. § 56:8-2.

543-44 (App. Div. 2001) (NJCFA applies to unconscionable terms of home improvement loan secured by mortgage on borrower's home)[7], but not deceptive statements related to modification of that same loan.  The NJCFA is clearly not so hollow, *cf. Gonzalez v. Wilshire Credit Corp*., 207 N.J. 557, 25 A.3d 1103 (2011) (NJCFA covers agreements to modify the repayment terms of a mortgage loan), and the Court should find that Plaintiffs' NJCFA withstands dismissal under Rule 12(b)(6).

Fundamental to the assessment of Plaintiffs' NJCFA claim is the accepted notion that "[t]he history of the [CFA] is one of constant expansion of consumer protection." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 691 A.2d 350, 364 (1997).  Moreover, "[t]here is no precise formulation for an 'unconscionable' act that satisfies the statutory standard for an unlawful practice.  The statute establishes 'a broad business ethic' applied 'to balance the interests of the consumer public and those of the sellers.'"  *D'Agostino v. Maldonado*, A-82/83 September Term 2011, 068940, 2013 N.J. LEXIS 953, at *20-21 (N.J. Oct. 3, 2013) (citation omitted).  Accordingly, the New Jersey Supreme Court has interpreted broadly the

---

[7]  When a federal court interprets state law, "[a]n intermediate appellate state court [decision] ... is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."  *Houbigant, Inc. v. Federal Ins. Co.*, 374 F.3d 192, 199 n.9 (3d Cir. 2004).

NJCFA's requirement that the targeted unlawful conduct be connected to "the sale or advertisement of any merchandise or real estate, or with the subsequent performance" of such "sale or advertisement."  N.J. Stat. Ann. § 56:8-2.  Two cases drive that point home.

First, it has been held that the NJCFA covers "the offering, sale, or provision of consumer credit."  *Lemelledo v. Beneficial Management Corp.*, 150 N.J. 255, 696 A.2d 546, 551 (1997).  In *Lemelledo*, the issue was whether the NJCFA "applies to lenders who engage in 'loan packing,'" which "involves increasing the principal amount of a loan by combining the loan with loan-related services, such as credit insurance, that the borrower does not want."  *Id.* at 548-49.  Answering in the affirmative, the *Lemelledo* Court noted that "[t]he language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud."  *Id.* at 551.  That intent, coupled with the fact that "the broad language of the CFA . . . include[s] both *lending* and insurance-sales practices," cemented its conclusion that "loan packing" is a covered practice.  *Id.* at 552 (emphasis added).

With heavy citation to *Lemelledo*, years later the New Jersey Supreme Court in *Gonzalez* held that the NJCFA covered a post-foreclosure-judgment agreement between borrower and mortgage servicer to avoid a sheriff's sale contingent on the

payment of loan arrears and additional costs and fees—in effect a forbearance agreement.  25 A.3d at 1107, 1121.  The predicate for the *Gonzalez* Court's holding was its determination that the agreement at issue was "both in form and substance an extension of credit to plaintiff originating from the initial loan."  *Id.* at 1107.  That determination was in turn an adoption of the position of the New Jersey Attorney General, appearing as *amicus curiae*.  *See id.* at 1113 ("Amicus Attorney General of New Jersey professes that because *mortgage loan servicing* is 'the subsequent performance of the initial extension of credit,' it therefore is a protected activity under the CFA.") (emphasis added).

Neither of the cases cited above involved the advertisement or sale of merchandise/real estate in the literal sense upon which BANA hinges its argument. Instead, those cases relied on broad readings of the statutory text to effect the clear legislative intent:  consumer protection.  *See Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 16, 647 A.2d 454, 461 (1994) (NJCFA's original purpose was to "combat 'sharp practices and dealings' that victimized consumers by luring them into purchases through fraudulent or deceptive means.") (citation omitted).  In that vein, and consistent with the types of conduct that the New Jersey Supreme Court has deemed covered by the NJCFA, BANA's unlawful practice concerning the wording of its TPP agreements must fit within the NJCFA's statutory scheme;

16

under *Gonzalez*, an agreement related to the modification of the terms of Plaintiffs'

loan necessarily implicates the subsequent performance of the original loan.[8]

Count IV survives dismissal.

### C.   Plaintiffs' TPP agreement contains enforceable promises, the detrimental reliance upon which sustains a cause of action for promissory estoppel.

BANA's challenge to Plaintiffs' promissory estoppel claim rests on the

assertion that it is "well established that 'TPPs are explicitly not [ ] enforceable

offer[s] for loan modification[s].'" ECF No. 45-1 at p. 6 (quoting *Slimm*, 2013 U.S.

Dist. LEXIS 62849, at *39).  But that assertion is wrong[9] and beside the point

because Plaintiffs do not allege that BANA failed to offer them a permanent

modification.  *Cf.* Compl. at ¶¶ 33-34, 37.  Rather, the express promises forming

---

[8] Notably, *Slimm v. Bank of America Corp.*, Civ. Case No. 12-5846, 2013 U.S. Dist. LEXIS 62849 (D.N.J. May 2, 2013)—the only case cited by BANA on this issue—makes no reference to *Lemelledo*, *Troup*, *Gonzalez*, or any other decision of the New Jersey courts.

[9] *See In re Bank of America Home Affordable Modification Program (HAMP) Contract Litig.*, M.D.L. No. 10-2193, 2013 U.S. Dist. LEXIS 126028, at *32 (D. Mass. Sept. 4, 2013) ("I have previously determined that plaintiffs' TPPs were enforceable contracts supported by consideration.  That decision is supported by a number of recent circuit court cases.") (internal citation omitted, collecting cases); *see also Bijeau-Seitz v. Atl. Coast Mortg. Servs.*, Civ. Case No. 12-6372, 2013 U.S. Dist. LEXIS 90877, at *11-14 (D.N.J. June 27, 2013) (breach of contract claim stemming from a loan modification agreement survives Rule 12(b)(6) because agreement was supported by consideration).

the basis of this claim are BANA's statements that Plaintiffs' "loan will be reported as 'paying under a partial payment plan' during the trial period" and that they would only be reported as "delinquent" in the event that they were "behind on [their] payments" when they started the TPP.  Compl. at ¶ 92.[10]  BANA expected Plaintiffs to rely, and they did rely, on the veracity of those statements—which turned out to be false—in deciding to go through with the TPP.  *See id.* at ¶¶ 93-95. And Plaintiffs were harmed as a consequence of that reliance.  *See id.* at ¶ 95. Therefore, Plaintiffs' promissory estoppel claim withstands dismissal.  *See Toll Bros., Inc. v. Board of Chosen Freeholders of Burlington*, 194 N.J. 223, 944 A.2d 1, 19 (2008) (elements of promissory estoppel are:  "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment.").

### D.  Michael Spositi adequately pleaded his claim for negligent infliction of emotional distress under New Jersey law.

In attacking Michael's claim for negligent infliction of emotional distress ("NIED"), BANA spends an inordinate amount of time discussing the emotional distress of bystanders who *witness* torts, under *Portee v. Jaffee*, 84 N.J. 88, 417 A.2d 521, 526-28 (1980).  The holding of *Portee* is obviously inapplicable to these

---

[10] In the face of allegations of deceptive business practices, BANA's suggestion, *see* ECF No. 45-1 at pp. 6-7, that these statements were merely "informational" and were not meant to be relied upon is truly perplexing.

facts because Michael was the direct victim of BANA's tortious conduct, so

BANA's argument ultimately hinges on the purported implausibility of Michael's

allegation that he was placed in "reasonable fear of immediate personal injury and

harm." *See* ECF No. 45- at p. 8.[11]  BANA's argument must fail.  Indeed, as with

Plaintiffs' other State law claims, this is yet another instance in which BANA has

neglected to perform a careful inspection of the Complaint and applicable case law.

As noted, *supra*, a claim is "facially plausible" and will thus survive a Rule

12(b)(6) motion when it is premised on "factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678.  Regarding NIED under New Jersey law, it has

been stated:  "as a general matter, '[r]ecovery for negligent infliction of emotional

harm [only] requires that it must be reasonably foreseeable that the tortious

conduct will cause genuine and substantial emotional distress or mental harm to

average persons' and that to succeed on such a claim, the plaintiff must establish

that the defendant owed him 'a legal duty to exercise reasonable care.'" *Albrecht*

*v. Williams*, Civ. Case No. 04-1895, 2009 U.S. Dist. LEXIS 95070, at *72 (D.N.J.

Oct. 13, 2009).  Furthermore, "[d]amages for emotional distress have been allowed

by New Jersey courts in an increasing number and variety of contexts." *Lawson v.*

---

[11]   Notably, BANA does not contest the severity of Michael's injuries.

*Nugent*, 702 F. Supp. 91, 94 (D.N.J. 1988) (collecting cases).

Here, Michael alleged that he was blindsided by BANA when he realized: (1) that "participation in the loan modification program automatically cancelled the BPP," Compl. at ¶ 31; (2) that BANA had communicated to the FHA "that Plaintiffs' had defaulted on the Account in the amount of $5,838.92," *id*. at ¶ 35; (3) that the FHA "would place a lien on Plaintiffs' home," *id*. at ¶ 35; (4) that Michael's credit reports "showed negative data during the trial period months," *id*. at ¶ 36, even though Plaintiffs never missed a mortgage payment; and (5) in sum, that the TPP agreement was full of lies.  *See id*. at ¶ 100.

Against that factual and legal backdrop, the Court can draw a reasonable inference that at the moment Michael realized the extent to which he had been deceived and harmed by BANA's misrepresentations, inaccuracies and/or false statements in the TPP agreement, the resulting "fright" was from a "reasonable fear of immediate personal injury." *Falzone v. Busch*, 45 N.J. 559, 214 A.2d 12, 17 (1965).  That is so because "personal injury" in tort covers mental suffering and other invasions of personal rights, and the New Jersey courts have sanctioned NIED claims based on the reasonable fear of something other than bodily injury. *See, e.g. Muniz v. United Hosps. Med. Ctr. Presbyterian Hosp.*, 153 N.J. Super. 79, 379 A.2d 57, 58 (App. Div. 1977) (noting the viability of an NIED claim based on

20

the "deviation from the standard of care reasonably to be expected of a hospital in dealing with corpses and the reasonable foreseeability that such a deviation would cause emotional and substantial physical disability with respect to persons normally constituted."); *Lemaldi v. De Tomaso of Am., Inc*., 156 N.J. Super. 441, 383 A.2d 1220, 1223 (Law Div. 1978) (denying defendant car company's motion for a new trial on plaintiff's NIED claim, where "the jury reasonably could have determined that when [defendant], aware of plaintiff's problems with [his car], failed to take or advise him of corrective action or to honor his claims, and responded to [plaintiff] varyingly from open hostility to inattention; in the already exasperating circumstances such conduct would aggravate an ordinary man to the point of 'mental anguish.'"); *cf. Portee*, 84 N.J. at 95 ("Since *Falzone*, this Court's decisions have shown no hostility to the imposition of liability for negligently caused mental or emotional distress even without an attendant risk of physical harm.").   Based on the decisional law of the New Jersey courts, in conjunction with the facts alleged, Michael's NIED claim withstands Rule 12(b)(6).

## V.    CONCLUSION

For the reasons set forth above, BANA's motion to partially dismiss Plaintiffs's Complaint should be denied *in toto*.

21

Respectfully submitted,

WILLIAMS CUKER BEREZOFSKY LLC


*/s/ Joseph Alan Venti*_____
JOSEPH ALAN VENTI, ESQ.


*Attorneys for Plaintiffs*


Dated:      October 21, 2013

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph Alan Venti, Esq., hereby certify that on this date Plaintiffs'

Memorandum of Law in Opposition to BANA's Motion to Partially Dismiss

Plaintiffs' First Amended Complaint is available for viewing on, and downloading

from, the Court's ECF System and has, as a result, been served on all counsel of

record.

Date: <u>October 21, 2013</u>                    <u>/s/ Joseph Alan Venti</u>
                                                              JOSEPH ALAN VENTI, ESQ.